PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN DONLOW, JR, | ) | |
| | ) | CASE NO. 4:25CV0495 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| CORRECTIONAL OFFICER | ) | |
| RODGERS, *et al.*, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | [Resolving ECF No. 10] |

Pending is Defendants Correctional Officer Rodgers, Correctional Officer Ward,

Institutional Inspector Wolfe, Sgt. Cassidy, and Ohio Department of Rehabilitation & Correction

("ODRC") Director Chambers-Smith's Motion to Dismiss Corrected Complaint [Doc. 1-5] (ECF

No. 10).[1] Defendants move the Court to dismiss the affirmative pleading for failure to state a

claim upon which the Court may grant relief pursuant to Fed. R. Civ. P. 12(b)(6). The Court has

been advised, having reviewed the record, the parties' briefs, and the applicable law. For the

reasons that follow, the Court grants the motion.

## I. Background

*Pro Se* Plaintiff Brian Donlow, Jr, a state prisoner incarcerated at the Ohio State

Penitentiary ("OSP"), proceeding *in forma pauperis*, filed a Complaint (ECF No. 1) and

---

[1] Defendants state they incorrectly referred to Plaintiff's complaint as a "corrected complaint" in the motion. *See* Reply Memorandum (ECF No. 14) at PageID #: 146. The Complaint (ECF No. 1) was received for filing on March 13, 2025. The next day, ECF No. 1-5 was received and filed by the Clerk's Office as a "Corrected Complaint." *See* Docket Entry dated March 13, 2025. A comparison of ECF No. 1 and ECF No. 1-5 reveals that they are the same.

(4:25CV0495)

Corrected Complaint (ECF No. 1-5) under 42 U.S.C. § 1983.  The OSP is a State owned and operated correctional institution.  Plaintiff is suing each Defendant in their individual and official capacities for claims and violations of his First Amendment right to be free from retaliation.

Plaintiff alleges that on January 7, 2025, he filed an informal complaint against Correctional Officers Rodgers and Ward for allegedly harassing him about a previous conduct report.  *See* ECF No. 1-5 at PageID #: 47-48.  His complaint was responded to, and he escalated the complaint to a grievance, which was also responded to by "someone by the name of Wolfe who I believe to be the Inspector […] stating[,] 'Based upon the available evidence, this grievance is denied.  There is insufficient evidence to support Incarcerated Individual Donlow Jr.'s claim.  This ends disposition of #OSP000000003378.' "  ECF No. 1-5 at PageID #: 48.

On January 28, 2025, Plaintiff filed a kite stating he wanted it to be documented that he was moved that day.  *See* ECF No. 1-5 at PageID #: 49.  Per the Corrected Complaint, his kite read, "I would like it to be documented that today I got moved back to my cell, I asked Ms. Rodgers how she was doing and she told me to stop talking to her before she write me up and Ms. Ward said 'Yeah I think that's establishment.  This drew me to believe they are seeking to retaliate against me for writing them up a few weeks back and I want to make sure you were notified.' "  ECF No. 1-5 at PageID #: 49.  All inmate housing reassignments (moves) are documented in all ODRC institutions.  Plaintiff acknowledges that the Institutional Inspector responded to his kite that same day stating, " 'I have read this kite.  If anything occurs that you believe is incorrect, you can file an ICR and the grievance procedure will be followed.  This [is] just your thought right now, nothing has occurred. Any alleged (sic) is investigated independently and fairly through my office.' "  ECF No. 1-5 at PageID #: 49.

2

(4:25CV0495)

Next, Plaintiff alleges that Correctional Officers Rodgers and Ward at different times did such things like look at him as he was standing at his cell door while they were removing another inmate for a shower, told him to remove papers from his window, refuse to allow him to shower, and at times allowed him to refuse to shower. He attests that this is all in retaliation. Each of his kites and complaints he properly submitted were immediately addressed. *See* ECF No. 1-5 at PageID #: 48-53.

Plaintiff states that Sgt. Cassidy found him guilty of having his cell-door window covered and disobeying a direct order. For these rule violations, which Plaintiff was found guilty of, he received a 30-day commissary restriction. *See* ECF No. 1-5 at PageID #: 52. That is the extent of his mention of Sgt. Cassidy.

Wolfe is the Institutional Inspector assigned to OSP. Plaintiff establishes that he disagreed with the timely responses he received when filing his kites and informal complaints. Plaintiff, however, did not allege he appealed the responses that he disagreed with. ODRC Director Chambers-Smith, is not mentioned anywhere in ECF No. 1-5.

Plaintiff, by filing this lawsuit, is seeking to be moved to Toledo Correctional Institution, that all the previously mentioned conduct reports written by Correctional Officers Rodgers and Ward be removed from his records, that he be permitted to make up commissary days, and receive monetary damages in the amount of $10,000 for "pain and suffering" and "for the time and effort it takes to formulate and file a complaint, for the copies of complaints and summons and all other forms that had to be paid for to file this complaint, for the paper and envelopes used to file this complaint." Finally, Plaintiff requests that Correctional Officer Rodgers, Correctional

3

(4:25CV0495)

Officer Ward, Institutional Inspector Wolfe, and Sgt. Cassidy to be fired.  ECF No. 1-5 at PageID #: 53-54.

## II. Standard of Review

*Pro se* pleadings are generally liberally construed and held to less stringent standards than formal pleadings drafted by lawyers, *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), but even a *pro se* complaint must set forth sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face to survive dismissal.  *See Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the dismissal standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), for determining a motion to dismiss under Fed. R. Civ. P. 12(b)(6) governs dismissals for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)).

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in th[e] complaint."  *Twombly*, 550 U.S. at 564.  A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 677-78 (quoting Fed. R. Civ. P. 8(a)(2)).  Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* at 678.  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Id.* at 557.  It must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

4

(4:25CV0495)

for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The plausibility standard is not akin to a

"probability requirement," but it asks for more than a sheer possibility that a defendant has acted

unlawfully.  *Twombly*, 550 U.S. at 556.  When a complaint pleads facts that are "merely

consistent with" a defendant's liability, it "stops short of the line between possibility and

plausibility of 'entitlement to relief.' " *Id.* at 557 (brackets omitted).  "[W]here the well-pleaded

facts do not permit the court to infer more than the mere possibility of misconduct, the complaint

has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at

679 (quoting Rule 8(a)(2)).  The Court "need not accept as true a legal conclusion couched as a

factual allegation or an unwarranted factual inference." *Handy-Clay v. City of Memphis, Tenn.,*

695 F.3d 531, 539 (6th Cir. 2012) (citations and internal quotation marks omitted).

### III.  Analysis

Defendants argue that Plaintiff has not alleged that any of their conduct was intentional or

calculated to violate Plaintiff's rights under the First Amendment to be free from retaliation, nor

has he alleged that the conduct was so clearly a constitutional violation that a reasonable official

would have known the conduct violated Plaintiff's rights.

### A.     Retaliation Claim

Plaintiff alleges that Defendants are retaliating against him for filing grievances on them.

"In order to demonstrate retaliation for protected conduct, a plaintiff must allege (1) that he

engaged in protected conduct, (2) that an adverse action was taken against him that would 'deter

a person of ordinary firmness from continuing to engage in that conduct,' and (3) that the adverse

action was motivated by the protected conduct." *Walker v. Mich. Dep't of Corr.,* 128 Fed.Appx.

(4:25CV0495)

441, 445 (6th Cir. 2005) (citing *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)).

Plaintiff, however, failed to address in his Response (ECF No. 13) any of the three elements necessary to plead a retaliation claim under 42 U.S.C. § 1983.  Specifically, Plaintiff has failed to claim that he was engaged in protected conduct.  Instead, he notes that he received a conduct report for his behavior, which he was found guilty of after a hearing before Sgt. Cassidy. *See* ECF No. 1-5 at PageID #: 52.  Therefore, he is checkmated from a retaliation claim. *Lewis v. Turner*, 16 Fed.Appx. 302, 304 (6th Cir. 2001) ("A finding of guilt based upon some evidence of a violation of prison rules essentially checkmates a retaliation claim.").  In addition, he has not plead an adverse action or that any alleged adverse action was the result of his protected conduct. *Thaddeus–X*, 175 F.3d at 394.  Finally, he cannot escape the implications of *Heck v. Humphrey*, 512 U.S. 477 (1994), as it relates to his guilty finding.  *See Edwards v. Balisok*, 520 U.S. 641 (1997); *Muhammad v. Close*, 540 U.S. 749 (2004) (describing the extension of the *Heck* doctrine in *Edwards*); *see also Orange v. Ellis*, 348 Fed.Appx. 69, 72 (5th Cir. 2009) ("Until [the plaintiff] can show that his disciplinary charges have been overturned, the court cannot redress the excessive force claim under Section 1983.").  As such, Plaintiff has failed to state a retaliation claim upon which relief can be granted.

**B.**     ***Heck v. Humphrey* and the "Favorable Termination Rule"**

In *Heck*, the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a [42 U.S.C.] § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive

6

(4:25CV0495)

order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." 512 U.S. at 486-87 (footnote omitted).  In applying the *Heck* standard, the Court of Appeals for the Sixth Circuit has upheld the dismissal of cases when an inmate was convicted of a prison infraction.  In *Jennings v. Mitchell*, 93 Fed.Appx. 723 (6th Cir. 2004), the Sixth Circuit stated:  "[a] prisoner found guilty in a prison disciplinary hearing cannot use § 1983 to collaterally attack the hearing's validity or the conduct underlying the disciplinary conviction.  Because a favorable ruling on Jennings's Eighth Amendment claim would imply the invalidity of his disciplinary conviction, this claim is not cognizable." *Id.* at 725 (citations omitted).  The Court concludes Plaintiff's disciplinary conviction necessarily bars him from succeeding on his retaliation clam, as such would necessarily imply the invalidity of the conviction.

**C.**    **42 U.S.C. § 1997e Demands Dismissal of Plaintiff's Complaint as he Failed to Exhaust Available Administrative Requirements**

Plaintiff cannot present any credible evidence to show that anyone interfered with his ability to properly complete the grievance process.  He failed to properly utilize all steps of the Ohio's inmate grievance procedure.  *See* Ohio Admin. Code §§ 5120-9-31(J)(1)-(3).  Plaintiff claims he filed informal complaints and grievances, but makes no reference to appealing any of the decisions.  This is fatal to Plaintiff moving forward.  He simply failed to exhaust his administrative remedies prior to filing suit, and he cannot demonstrate that he made affirmative efforts to comply with the requirements.  Moreover, Plaintiff's own contentions within the Complaint (ECF No. 1)/Corrected Complaint (ECF No. 1-5) demonstrate that Plaintiff had full access to the administrative grievance process.

7

(4:25CV0495)

**D.        Personal Involvement and *Respondeat Superior***

Individual capacity claims seek to hold a defendant personally liable for damages.  A plaintiff cannot establish the liability of any defendant absent a clear showing that the defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior.  *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Mullins v. Hainesworth*, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995) (order).  Plaintiff's only allegation against ODRC Director Chambers-Smith, Sgt. Cassidy, and Institutional Inspector Wolfe are regarding their professional positions.  Because Plaintiff has not alleged facts to suggest that these Defendants personally participated in any of the actions giving rise to the Complaint (ECF No. 1)/Corrected Complaint (ECF No. 1-5), the claims asserted against ODRC Director Chambers-Smith, Sgt. Cassidy, and Institutional Inspector Wolfe in their individual capacities are dismissed.

**E.        *Respondeat Superior* Liability does not apply under 42 U.S.C. § 1983**

Construing liberally, the Court concludes that Defendant Chambers-Smith is sued based solely on her supervisory status.  The only connection to the facts of this case is that this Defendant was the Director of ODRC when the alleged incidents occurred; Plaintiff fails to assert any other allegations against her.  In addition, Plaintiff makes no allegations of personal involvement or collusion against ODRC Director Chambers-Smith, Sgt. Cassidy or Institutional Inspector Wolfe.  The only connection that ODRC Director Chambers-Smith, Sgt. Cassidy, and Institutional Inspector Wolfe have to the facts of this case is that they were in supervisory and administrative roles.  The doctrine of *respondeat superior* does not apply in § 1983 lawsuits to impute liability to supervisory personnel.  *See Wingo v. Tenn. Dep't of Corr.*, 499 Fed.Appx. 453, 455 (6th Cir. 2012) (per curiam) (citing *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981)).

8

(4:25CV0495)

"In order to find supervisory personnel liable, a plaintiff must allege that the supervisors were somehow personally involved in the unconstitutional activity of a subordinate, or at least acquiesced in the alleged unconstitutional activity of a subordinate." *Id.* (citation omitted). Section 1983 liability must be based upon active unconstitutional behavior, not upon a mere failure to act. *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) (citing *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989)).

Moreover, "liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.' " *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998), *cert. denied*, 526 U.S. 1115 (1999)).  When the only involvement of prison officials concerned the denial of administrative grievances, they cannot be liable under § 1983 based solely on a theory that failure to act constituted an acquiescence in the unconstitutional conduct. *Id.*  In other words, even a supervisory official who is aware of the unconstitutional conduct of his subordinates, but fails to act, generally cannot be held liable in his individual capacity. *Lillard v. Shelby County Bd. Of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996) (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied*, 469 U.S. 845 (1984)).

**F.      The Eleventh Amendment Bars Plaintiff's Official Capacity Claims**

The Complaint (ECF No. 1)/Corrected Complaint (ECF No. 1-5) alleges that Defendants, in their official capacity, violated his constitutional rights.  The Eleventh Amendment to the United States Constitution is a bar to the imposition of liability upon state agencies and state officers sued in their official capacities. *Latham v. Office of Atty. Gen. of State of Ohio*, 395 F.3d 261, 270 (6th Cir. 2005); *Bouquett v. Clemmer*, 626 F. Supp. 46, 48 (S.D. Ohio 1985).

9

(4:25CV0495)

Under the Eleventh Amendment, federal courts lack jurisdiction to hear suits by private citizens against a state unless the state explicitly consents to the suit or unless Congress, pursuant to a valid exercise of power, abrogates the States' sovereign immunity. *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990). Ohio has not waived its sovereign immunity. *McCormick v. Miami Univ.*, 693 F.3d 654, 664 (6th Cir. 2012).

An entity acting as an "arm of the State" enjoys Eleventh Amendment immunity from federal suit to the same extent as the state itself. *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005). And this Eleventh Amendment immunity extends to state officials sued in their official capacity because "a suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office" and is therefore "no different from a suit against the State itself." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989) (citations omitted).

Here, Correctional Officer Rodgers, Correctional Officer Ward, Institutional Inspector Wolfe, Sgt. Cassidy, and ODRC Director Chambers-Smith are state officers sued in their official capacities and entitled to Eleventh Amendment immunity. Accordingly, any claims raised against Defendants in their official capacity and seeking monetary damages must be dismissed.

### G. Qualified Immunity

Once a defendant raises qualified immunity, the burden shifts to the plaintiff, who must demonstrate both that the official violated a constitutional or statutory right, and that the right was so clearly established at the time of the alleged violation that every reasonable official would have understood that what he was doing violated that right. *Ashcroft v. al-Kidd*, 563 U.S 731, 741 (2011). If the plaintiff fails to carry this burden as to either element of the analysis, qualified

10

(4:25CV0495)

immunity applies and the official is immune. *Cockrell v. City of Cincinnati*, 468 Fed.Appx. 491, 494 (6th Cir. 2012). "Clearly established law" should not be defined "at a high level of generality" and the clearly established law must be "particularized" to the facts of the case. *Ashcroft*, 563 U.S. at 742; *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). While generally a court should look to binding precedent with sufficiently similar facts to the case in front of it, "[s]ome violations of constitutional rights are so obvious that a 'materially similar case' is not required for the right to be clearly established." *Hearring v. Sliwowski*, 712 F.3d 275, 280 (6th Cir. 2013) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)); *see also Taylor v. Riojas*, 592 U.S. 7, 8-9 (2020) (per curiam) (holding that, in an outrageous case, a "general constitutional rule" will serve as sufficient notice to an officer claiming qualified immunity) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court established a two-step inquiry for determining whether an official is entitled to qualified immunity. *Id.* at 201. The Court must consider (1) whether, viewing the evidence in the light most favorable to the injured party, a constitutional right has been violated; and (2) whether that right was clearly established. *Id.*; *Mosier v. Evans*, 90 F.4th 541, 546 (6th Cir. 2024). In *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court held that while the sequence set forth in *Katz* is often appropriate, it is not mandatory, and courts have discretion to decide which of the two prongs of the qualified immunity analysis to address first. *Id.* at 236; *Williams v. City of Grosse Pointe Park*, 496 F.3d 482, 485 (6th Cir. 2007) (if a plaintiff is "unable to establish sufficient facts to support a finding of a constitutional violation by the defendant, the inquiry ceases, and the court must award judgment to the defendant"). The Court does not address the qualified immunity argument of

11

(4:25CV0495)

Defendants because it concludes, for the reasons set forth above, that Plaintiff has not sustained his burden to demonstrate a deprivation of constitutional rights regarding his retaliation claim against them.

### IV.  Conclusion

For all of the foregoing reasons and those that have been articulated in the memoranda of the points and authorities on which Correctional Officer Rodgers, Correctional Officer Ward, Institutional Inspector Wolfe, Sgt. Cassidy, and ODRC Director Chambers-Smith rely, Defendants' Motion to Dismiss Corrected Complaint [Doc. 1-5] (ECF No. 10) is granted.  The Complaint (ECF No. 1)/Corrected Complaint (ECF No. 1-5) fails to state a claim upon which Plaintiff may be granted relief and is dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B).  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.


IT IS SO ORDERED.


__March 27, 2026__            */s/ Benita Y. Pearson*
Date                              Benita Y. Pearson
                                 United States District Judge